**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES MUELLER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>SIRIUS XM RADIO INC.,<br><br>        Defendant. | Civil No. 1:20-cv-09339-JMF |

**SIRIUS XM RADIO INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS**
**PENDING *FACEBOOK, INC. v. DUGUID*, NO. 19-511 (U.S.)**

Lee A. Armstrong
Allison L. Waks
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
Email: awaks@jonesday.com

Thomas Demitrack (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   STATEMENT OF FACTS ................................................................................................ 1

    A.   The Controversy Surrounding the TCPA's ATDS Prohibition ................................ 1

    B.   Mueller's TCPA Suit Against Sirius XM ................................................................. 3

II.  ARGUMENT ..................................................................................................................... 4

    A.   A Stay Would Save the Court and the Parties from Potentially
        Unnecessary Litigation ............................................................................................. 4

    B.   This Case Differs from Those in Which Courts Have Denied Stays......................... 7

III. CONCLUSION .................................................................................................................. 9

CERTIFICATE OF SERVICE ................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acton v. Intellectual Cap. Mgmt., Inc.*,
  No. 15-cv-4004, 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015)................................5

*Akselrod v. MarketPro Homebuyers LLC*,
  No. CCB-20-2966, 2021 WL 100666 (D. Md. Jan. 12, 2021) ...........................7, 8

*Aleisa v. Square, Inc.*,
  No. 20-cv-806, 2020 WL 5993226 (N.D. Cal. Oct. 9, 2020)................................6

*Allan v. Penn. Higher Educ. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020) ...............................................................................2

*Bowers v. Transportacion Maritima Mexicana, S.A.*,
  901 F.2d 258 (2d Cir. 1990)................................................................................1

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018)................................................................................3

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020)................................................................................2

*Elzen v. Global Strategy Grp., LLC*,
  No. 20-CV-3541, 2021 WL 185328 (S.D.N.Y. Jan. 19, 2021) ...............................6

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 193 (2020)..........................................................................................3

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020)...............................................................................2

*Glasser v. Hilton Grand Vacations Co.*,
  948 F.3d 1301 (11th Cir. 2020) ..........................................................................3

*In re Rules & Regs. Implementing the TCPA*,
  10 FCC Rcd. 12391 (1995)..................................................................................2

*In re Rules & Regs. Implementing the TCPA*,
  18 FCC Rcd. 14014 (2003)..................................................................................2

*Kappel v. Comfort*,
  914 F. Supp. 1056 (S.D.N.Y. 1996).....................................................................4

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)............................................................................................4

*Loftus v. Signpost Inc.*,
  464 F. Supp. 3d 524 (S.D.N.Y. 2020)...............................................................4, 5

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) .............................................................................2

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**Page(s)**

*Mejia v. Time Warner Cable Inc.*,
No. 15-cv-6445, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017).................................5

*Pittenger v. First Nat'l Bank of Omaha*,
No. 20-cv-10606, 2020 WL 5596162 (E.D. Mich. Sept. 18, 2020) .........................8

*Santana v. Cavalry Portfolio Servs., LLC*,
No 19 Civ. 3773, 2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019) ...........................7

*Sealey v. Chase Bank (U.S.A.), N.A.*,
No. 19-cv-7710, 2020 WL 5814108 (N.D. Cal. Sept. 29, 2020)..............................6

*Sikhs for Justice v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012).....................................................................4

*Ulery v. AT&T Mobility Servs., LLC*,
No. 20-cv-2354, 2020 WL 7333835 (D. Colo. Dec. 12, 2020) ...............................6

**Statutes**

Telephone Consumer Protection Act of 1991,
47 U.S.C. § 227.................................................................................................1, 2

**Other Authorities**

47 C.F.R. § 64.1200 ................................................................................................8

Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the
TCPA Went from Consumer Protection Statute to Litigation Nightmare*,
2018 U. Ill. J.L. Tech & Pol'y 313 .........................................................................2

Defendant Sirius XM Radio Inc. ("Sirius XM") respectfully moves this Court to stay proceedings until the Supreme Court renders its decision in *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. argued Dec. 8, 2020). In *Facebook*, the Supreme Court will decide the central question in this case—what counts as an "automatic telephone dialing system" (or "ATDS") for purposes of the Telephone Consumer Protection Act, 47 U.S.C. § 227. In short, and for the reasons explained below, the Court should exercise its discretion and decline to proceed further until the Supreme Court provides its controlling guidance in *Facebook*. Several other courts have granted *Facebook*-related stays, in some cases with the agreement of Plaintiffs' counsel. Here, following the issuance of the briefing schedule on Sirius XM's pending Motion to Compel Arbitration (Dkt. 18), Sirius XM suggested that the parties approach the Court with an agreed-upon motion to stay this case altogether pending the *Facebook* decision, but Mueller's counsel here refused to agree to such a stay. Sirius XM believes that a stay will not prejudice Mueller and will conserve both the Court's and the parties' resources.[*]

## I.   STATEMENT OF FACTS

### A.   The Controversy Surrounding the TCPA's ATDS Prohibition.

The Telephone Consumer Protection Act of 1991 makes it generally unlawful to place unwanted calls to wireless numbers using an "automatic telephone dialing system," defined as

---

[*] Sirius XM timely asserted its right to arbitrate this dispute "at the very outset" of this litigation by filing its pending Motion to Stay Proceedings and Compel Compliance with Dispute Resolution Proceedings in the Parties' Agreement. *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. 1990); *see* Dkts. 15–16. Sirius XM recognizes that the Court has issued a briefing order on that Motion. *See* Dkt. 18. It is concerned, however, that awaiting the result of that Motion before making the present application (should this application even be necessary depending on the outcome of that Motion) might prove inefficient. By filing the present motion, Sirius XM is not abandoning its right to enforce the parties' arbitration agreement. *See, e.g.*, *Bowers*, 901 F.2d at 263 ("Mere participation in an action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner.").

-1-

"equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1), (b)(1)(A)(iii).  From its enactment in 1991 until roughly 2010, this provision led a quiet life.  The FCC—tasked with implementing the TCPA, *see id.* § 227(b)(2)—explained early on that this prohibition covers only devices that can "randomly or sequentially generate[] numbers"; it does not cover calls "directed to [a] specifically programmed contact number."  *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12400 (1995).  As a result, while the ATDS prohibition barred the use of the annoying random and sequential dialing machines that had spurred the statute's passage, it did not affect calls from equipment that merely dialed from a list.

As these once-common random or sequential dialing equipment faded from use, however, the FCC changed course, suggesting that any equipment with the capacity "to dial numbers without human intervention" fell within the statute.  *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14092 (2003).  An explosion of litigation followed.  *See, e.g.*, Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the TCPA Went from Consumer Protection Statute to Litigation Nightmare*, 2018 U. Ill. J.L. Tech & Pol'y 313, 322 (documenting the rise in TCPA suits from fourteen in 2007 to more than 3,000 in 2015).  So did a circuit split.  The Second, Sixth, and Ninth Circuits read the ATDS prohibition to cover equipment that has the capacity to "store lists of numbers" and then "dial those stored numbers without human intervention."  *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 290 (2d Cir. 2020); *see also Allan v. Penn. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).  Three other circuits read it to cover only equipment with the capacity "to generate random or sequential numbers."  *Gadelhak v.*

*AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (Barrett, J.); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018).

The Supreme Court will soon resolve this question.  In *Facebook*, the Court granted certiorari to decide whether "the definition of ATDS in the TCPA encompasses any device that can store and automatically dial telephone numbers, even if the device does not use a random or sequential number generator."  Pet. for Cert. in *Facebook*, 2019 WL 5390116, at *ii (filed Oct. 17, 2019); *see* 141 S. Ct. 193 (2020) (mem.) (granting certiorari on this question).  The Court heard oral argument on December 8, 2020.  It could issue its decision any day now, and will almost certainly do so before the Court rises for the summer in June.

### B.    Mueller's TCPA Suit Against Sirius XM.

On November 6, 2020, Plaintiff James Mueller brought this lawsuit against Sirius XM, alleging that Sirius XM unlawfully called him using an ATDS.  He does *not* allege that Sirius XM chanced upon his number through equipment that randomly or sequentially dials numbers. (To the contrary, Mueller admits that he "signed up for a free trial" before the calls began. Compl. ¶ 5.)  Instead, Mueller alleges that Sirius XM uses an ATDS because its equipment makes calls automatically.  *See, e.g.*, Compl. ¶ 3 (claiming to have received "dead calls" or "quickly dropped calls" after picking up); *id.* (claiming that "numerous impersonal calls from multiple numbers … indicate[] that [Sirius XM] was using an autodialer"); *id.* ¶ 11 (online hearsay accounts regarding "unsolicited telemarketing robocalls").  Mueller seeks to represent a class of all those in the United States "who received one or more calls on their cellular phones from [Sirius XM]" using ATDS equipment.  *Id.* ¶ 23; *see id.* ¶ 30(a) (listing whether Sirius XM "us[ed] an [ATDS]" as a common question for class purposes).

-3-

Mueller's putative ATDS class action is not the only pending case against Sirius XM alleging such a claim.  In *Meza v. Sirius XM Radio Inc.*, the plaintiffs seek to represent a nationwide class of wireless users allegedly called by Sirius XM with ATDS equipment on or after July 6, 2016.  *See* Complaint ¶ 29, Dkt. 1, *Meza v. Sirius XM Radio Inc.*, No. 17-cv-2252 (S.D. Cal. filed November 3, 2017).  Late last year, the district judge in *Meza* stayed that litigation pending the Supreme Court's decision in *Facebook*.  *See* Dkt. 100 in *Meza*.

II.   **ARGUMENT**

    A.   **A Stay Would Save the Court and the Parties from Potentially Unnecessary Litigation.**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "In determining whether to grant a stay, courts in this district consider five factors."  *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020).  Those factors are:

> (1) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

Unsurprisingly, courts applying these factors have often decided to stay litigation "when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012).  In such circumstances, the benefits of a pause are obvious:  The parties save themselves the time and trouble of litigating issues that may become moot, and the court saves itself the trouble of weighing in on questions that will soon be resolved by intervening precedent.

And the slight downsides of such a pause are similarly apparent: The plaintiff need only wait a few months to have its case decided under the correct understanding of the law.

District courts within this Circuit have routinely followed this approach in TCPA cases. For example, in *Loftus*, the district court granted a stay in a TCPA case in light of the Supreme Court's then-impending decision in *Barr v. American Ass'n of Political Consultants*, a challenge to the constitutionality of a 2015 amendment to the TCPA that exempted certain calls. *See* 464 F. Supp. 3d at 527. As the court explained, "[t]he defendant has a substantial interest in avoiding unnecessary litigation, which could be substantial given that the case is asserted as a class action." *Id.* Moreover, because it was "possible" that the Supreme Court could end the case entirely, "[t]hird parties … ha[d] an interest in a stay" because the Supreme Court's decision might "moot the need for discovery" from them. *Id.* Finally, because "oral argument ha[d] already been held," "a stay until the Supreme Court issue[d] its decision w[ould] be brief." *Id.* Given these realities (and the exigencies of the ongoing COVID-19 pandemic), "[a] stay … conserved judicial resources and avoid[ed] unnecessary expense." *Id.*; *see also, e.g.*, *Mejia v. Time Warner Cable Inc.*, No. 15-cv-6445, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017) (stay granted pending a D.C. Circuit decision that would set binding precedent with respect to the validity of certain FCC TCPA orders); *Acton v. Intellectual Capital Mgmt., Inc.*, No. 15-cv-4004, 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) (stay granted pending Supreme Court and D.C. Circuit cases that would either end the case or "more precisely define the terms set forth in the TCPA").

Indeed, district courts across the country—including courts in this District—have deployed similar reasoning when granting stays to await the Supreme Court's decision in

*Facebook*.  In *Elzen v. Global Strategy Group, LLC*, the court stayed an ATDS case involving

text messages to await *Facebook*.  *See* No. 20-CV-3541, 2021 WL 185328, at *4 (S.D.N.Y. Jan.

19, 2021).  As it explained, the "arguments for staying the case [were] strong":

> [The defendant] has a substantial interest in avoiding unnecessary discovery and
> its concomitant costs.  The Court, too, has an interest in avoiding the unnecessary
> expenditure of judicial resources to set a schedule for discovery and manage any
> discovery disputes.  Meanwhile, the risk of prejudice to Plaintiff and potential
> class members is low.  The Supreme Court has already held oral argument in
> *Facebook v. Duguid*, and the only harm that Plaintiff has suffered, and the only
> future harm that delayed relief may risk, is the minor "annoyance" of receiving an
> unsolicited text message.

*Id.*  Other courts have followed the same basic approach.  In *Aleisa v. Square, Inc.*, for example,

the court explained in granting a stay that *Facebook* would "greatly simplify a key question of

law in the instant case—what constitutes an ATDS."  No. 20-cv-806, 2020 WL 5993226, at *7

(N.D. Cal. Oct. 9, 2020).  Moreover, the "early stage" of the litigation "weigh[ed] in favor of a

stay."  *Id.* at *8.  "In the absence of a stay, the parties w[ould] have to expend time and money

conducting discovery on an issue central to Defendant's liability while lacking a clear idea of the

law that will ultimately apply at summary judgment or at trial."  *Id.*  Finally, it was "implausible"

that such a short delay could have any impact on the plaintiff's ability to secure evidence,

particularly in light of the "protective measures" that could be taken to guard evidence in the

interim.  *Id.*; *see also, e.g.*, *Sealey v. Chase Bank (U.S.A.), N.A.*, No. 19-cv-7710, 2020 WL

5814108 (N.D. Cal. Sept. 29, 2020) (staying in light of *Facebook*); *Ulery v. AT&T Mobility

Servs., LLC*, No. 20-cv-2354, 2020 WL 7333835 (D. Colo. Dec. 12, 2020) (same).

   This case is similarly situated.  *Facebook* will decide the central question governing

Mueller's ATDS claim, regardless of whether this case is sent to arbitration (as Sirius XM urges

in its pending arbitration motion) or remains in this Court.  The parties have not yet conducted

any discovery into that claim, but the scope and nature of any discovery will differ significantly

depending on *Facebook*'s outcome.  Proceeding further may result in wasting the parties' and the Court's time based on a view of the law that Sirius XM expects will soon be overruled by the Supreme Court.  By contrast, waiting a few months for the Supreme Court's decision will not harm Mueller in any way; it is "implausible" to think that such a short delay would meaningfully impact his access to evidence or otherwise affect the status of his claim.

Indeed, the case for a stay is even stronger here than the cases discussed above. Mueller's putative ATDS class falls entirely within the alleged ATDS class at issue in *Meza*.  *See supra* at 4.  As a result, and even if the Court were to rule against Sirius XM on its pending arbitration motion, Mueller's duplicative lawsuit would be subject to dismissal, transfer, or a stay pending *Meza* under the first-filed principle.  *See, e.g.*, *Santana v. Cavalry Portfolio Servs., LLC*, No 19 Civ. 3773, 2019 WL 6173672, at *2–5 (S.D.N.Y. Nov. 19, 2019) (staying a duplicative putative class action pending the resolution of an earlier-filed putative class action).  But *Meza* itself—which is far more advanced procedurally than Mueller's brand new lawsuit—has been stayed pending *Facebook*.  *See* Dkt. 100 in *Meza*, No. 17-cv-2252 (S.D. Cal.).  Refusing to stay this case in light of *Facebook* would thus allow Mueller to circumvent the first-filed rule and give him a chance to engage in duplicative, wasteful litigation while the *Meza* court awaits the Supreme Court's instruction.  This Court should not allow that unfair result.

### B.  This Case Differs from Those in Which Courts Have Denied Stays.

To be sure, some courts have rejected requests to stay TCPA cases pending the Supreme Court's decision in *Facebook*.  But none of those cases involved duplicative class actions like Mueller's.  And each of them turned on considerations that do not apply here.  For example, in *Akselrod v. MarketPro Homebuyers LLC*, the plaintiff's allegations suggested that the defendant's equipment might have "use[d] a random or sequential number generator."  No. CCB-20-2966, 2021 WL 100666, at *1 (D. Md. Jan. 12, 2021).  As a result, "discovery and

briefing regarding whether MarketPro's system qualifies as an ATDS would still be necessary" no matter the outcome in *Facebook*. *Id.*  Similarly, in *Pittenger v. First National Bank of Omaha*, the district court refused to stay because the plaintiff brought other claims that would still require "discovery into the systems [the defendant] used to contact" the plaintiff, regardless of how *Facebook* turned out.  No. 20-cv-10606, 2020 WL 5596162, at \*3 (E.D. Mich. Sept. 18, 2020).

Here, by contrast, Mueller's only other claim—that Sirius XM unlawfully called him despite his presence on the Do Not Call Registry—will not require any such evidence.  And that claim is patently meritless in any event.  As Sirius XM explained in its Memorandum of Law in Support of its Motion to Compel Arbitration, Mueller contacted Sirius XM on May 13, 2020, to request that it activate a trial subscription on Mueller's recently purchased pre-owned 2018 Subaru Outback.  *See* Memorandum of Law in Support of its Motion to Compel Arbitration, Dkt. 16, at 3 n. 3; Decl. of Elizabeth Ruhland, Dkt. 17, ¶ 23.  The FCC's regulations allow callers to contact those on the Nationwide Do Not Call Registry with whom the caller has an "established business relationship."  *See* 47 C.F.R. § 64.1200(c) (prohibiting "telephone solicitation" to those on the Registry); *id.* § 64.1200(f)(14)(ii) (defining "telephone solicitation" to exclude calls to those with whom the caller has an "established business relationship").  The FCC's regulations also explain that, when a customer "inquir[es]" about a caller's "products or services," the caller gains an established relationship with that inquiring customer for the "three months immediately" following the inquiry.  *Id.* § 64.1200(f)(5).  The six calls that Mueller challenges all fell within three months of his request, or inquiry, to activate his trial subscription.  *See* Compl. ¶ 4 (last call on August 11, 2020).  As a result, his Do Not Call Registry claim must fail. There is no reason to deny a stay just so that Mueller can litigate a doomed claim.

III.    **CONCLUSION**

      Sirius XM respectfully requests that this Court exercise its discretion to stay these

proceedings pending the Supreme Court's decision in *Facebook*.


 Dated: January 25, 2021                   Respectfully submitted,

                                     */s/ Allison L. Waks*

                                     Lee A. Armstrong
                                     Allison L. Waks
                                     JONES DAY
                                     250 Vesey Street
                                     New York, New York
                                     Tel: (212) 326-3939
                                     Fax: (212) 755-7306
                                     Email: laarmstrong@jonesday.com
                                     Email: awaks@jonesday.com

                                     Thomas Demitrack (admitted *pro hac vice*)
                                     JONES DAY
                                     North Point
                                     901 Lakeside Avenue
                                     Cleveland, OH 44114-1190
                                     Tel: (216) 586-3939
                                     Fax: (216) 579-0212
                                     Email: tdemitrack@jonesday.com

                                     *Attorneys for Defendant Sirius XM Radio Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Allison L. Waks, hereby certify under penalty of perjury that on January 25, 2021, I caused a true and correct copy of the foregoing to be filed with the Court and served on counsel of record by ECF.

Dated: New York, New York
      January 25, 2021

*/s/ Allison L. Waks*
Allison L. Waks